# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PENNENVIRONMENT and SIERRA CLUB,<br><br>Plaintiffs,<br><br>v.<br><br>GENON NORTHEAST MANAGEMENT COMPANY,<br>Defendant. | Civil Action No. 07-00475<br><br>Magistrate Judge Robert C. Mitchell |

## CONSENT DECREE AND ORDER

Upon consideration of the Motion for Entry of Consent Decree and Order filed by the parties, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

### I.   BACKGROUND

1. PennEnvironment and Sierra Club (collectively, "Plaintiffs"), brought this suit against Reliant Energy Northeast Management Company, now known as GenOn Northeast Management Company ("GenOn"), under the federal Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("CWA"), and the Pennsylvania Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1 *et seq.* ("the Clean Streams Law" or "CSL"), for alleged violations of the CWA and CSL at the Conemaugh Generating Station ("CGS"). GenOn has denied certain of the Plaintiffs' allegations.

2. The parties attest and the Court, by entering this Consent Decree and Order (the "Consent Decree"), finds that this Consent Decree has been negotiated by all the parties in good faith; settlement will avoid continued litigation between the parties; settlement of this matter is in

the public interest and in accordance with the CWA and CSL, and entry of this Consent Decree is fair and reasonable.

3. On the date this Consent Decree is filed with the Court, the Plaintiffs shall concurrently serve a copy of this Consent Decree on the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region III and the United States Department of Justice, consistent with the requirements of 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5.

## II. JURISDICTION AND VENUE

4. Plaintiffs' Complaint states a claim upon which relief can be granted against GenOn under 33 U.S.C. § 1365. This Court has jurisdiction over the parties and subject matter of this Decree pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365. Venue is proper in this Court pursuant to 33 U.S.C. § 1365(c) and 28 U.S.C. §§ 1391(b) and (c).

## III. APPLICABILITY

5. The provisions of this Consent Decree shall apply to and be binding upon the parties and their respective officers, employees, successors and assigns.

6. The duties and obligations under this Consent Decree shall not be modified, diminished, terminated or otherwise altered by the transfer of any legal or equitable interest in the CGS or any part thereof.

7. If, during the pendency of this Consent Decree, GenOn ceases to operate the CGS, GenOn shall serve a copy of this Consent Decree upon the successor operator at least thirty (30) days prior to the contemplated transfer of operations and shall contemporaneously inform the Plaintiffs of such transfer. In the event of a transfer of operations, the parties shall petition

the Court to modify the Consent Decree to substitute the successor operator for GenOn as a party hereto, as agreed to by Plaintiffs and the owners of CGS.

8. Definitions. For the purposes of this Consent Decree, the following terms shall have the following meanings:

"The NPDES Permit": Permit No. PA0005011 issued by the Commonwealth of Pennsylvania Department of Environmental Protection ("DEP") on or about December 27, 2001 to GenOn, formerly known as Reliant Energy Northeast Management Company, pursuant to the National Pollutant Discharge Elimination System ("NPDES") permitting program of the federal Clean Water Act, 33 U.S.C. § 1342, and any and all subsequent amendments thereto or renewals or reissuances thereof.

"Water quality-based effluent limitations" ("WQBELs"): limitations on the daily maximum and monthly average concentrations of iron, aluminum, manganese, selenium, boron, and mercury in the Conemaugh Generating Station's industrial waste discharges, as set forth in the NPDES Permit.

"Conemaugh Generating Station" or "CGS": the coal-fired generating station operated by GenOn and located in West Wheatfield Township, Indiana County, PA.

IV.   PERFORMANCE OBLIGATIONS

MERCURY MONITORING

9. GenOn shall comply with the mercury monitoring and reporting requirements set forth in the NPDES Permit and the regulations of the DEP and EPA, including but not limited to the use of a test method approved by the DEP and EPA with a method detection limit for mercury that is sufficiently sensitive to determine whether CGS effluent complies with the NDPES Permit's WQBELs for mercury.

## WATER QUALITY-BASED EFFLUENT LIMITATIONS

10. Not later than the date this Consent Decree is entered, GenOn shall achieve and shall thereafter maintain compliance with the daily maximum and monthly average WQBELs for iron, aluminum, and manganese applicable to its cooling tower effluent and any other waste streams discharged through Outfall 003.

11. a. Not later than February 1, 2012, GenOn shall achieve and shall thereafter maintain compliance with the daily maximum and monthly average WQBELs for selenium and boron applicable to its flue gas desulfurization system effluent and any other waste streams discharged through Outfall 007.

b. On or about December 23, 2009, GenOn submitted Part II WQM Permit Application (No. 3210201), Conemaugh Generating Station, New Florence, PA, Conveyance Channel Upgrade for Outfall 007, NPDES Permit No. PA0005011, to the DEP and supplemented the application by its Response to Technical Deficiency Letter on or about February 25, 2011 (collectively, the "Application"). Not later than the later of (i) February 1, 2012, or (ii) six (6) months after the date DEP issues the Part II WQM Permit requested in the Application, GenOn shall achieve and maintain compliance with the daily maximum and monthly average WQBELs for iron and manganese at Outfall 007; provided, however, that GenOn shall use its best efforts to obtain the Part II WQM Permit requested in the Application as soon as possible. If, eighteen (18) months after entry of this Consent Decree, DEP has not yet issued the necessary permit and compliance with WQBELs for iron or manganese has not yet been achieved at Outfall 007, GenOn shall submit to Plaintiffs in writing a statement of its reasons for not having attained compliance. Plaintiffs shall have the right to submit such statement, along with a written response by Plaintiffs, to the Court and to seek such further relief from the Court as may be appropriate to achieve compliance.

12. Notwithstanding any other provision of this Consent Decree, GenOn shall not be required by this Consent Decree to achieve any WQBEL or other effluent limitation in the NPDES Permit as modified, renewed or reissued by DEP during the time such limitation is under appeal by GenOn. During such appeal period, GenOn shall be required to achieve the corresponding limitation in effect prior to the modification of the limitation, for purposes of compliance with this Consent Decree.

MISCELLANEOUS OBLIGATIONS

13. In addition to its other obligations hereunder:

a. Within thirty (30) days of entry of this Consent Decree, GenOn shall provide to DEP the results of the pilot testing it conducted for the iBIO/Dowex system that is to be installed at Outfall 007;

b. GenOn shall minimize the use of existing stores of high manganese limestone in the CGS flue gas desulfurization system by blending it with low manganese limestone until February 1, 2012; and

c. Within twenty-four (24) months of entry of this Consent Decree, GenOn shall complete whole effluent toxicity testing at Outfalls 003 and 007 in accordance with Section 3.2 of the Toxics Reduction Evaluation Work Plan dated August 14, 2007.

V. PENALTIES

14. Within sixty (60) days of the entry of this Consent Decree, GenOn shall pay to the U.S. Treasury a civil penalty of $250,000 to settle any and all violations of the Clean Water Act and the Pennsylvania Clean Streams Law alleged by Plaintiffs in this action that occurred on or before the filing of the Complaint through the date this Consent Decree is entered.

15. In the event that GenOn fails, after the date this Consent Decree is entered, to comply with its obligations under paragraph 10 of this Consent Decree, GenOn shall pay a

stipulated penalty of $1,000 for each violation of a daily maximum limit for iron, aluminum, or manganese and $5,000 for each violation of a monthly average limit for iron, aluminum, or manganese. For purposes of this Consent Decree, an exceedance of a daily effluent limitation in a single effluent sample shall constitute a single violation of the daily effluent limit.

16. In the event that GenOn fails to comply with its obligations under paragraph 11 of this Consent Decree, GenOn shall pay a stipulated penalty of $1,000 for each violation of a daily maximum limit for iron, manganese, selenium or boron and $5,000 for each violation of a monthly average limit for iron, manganese, selenium or boron.

17. Stipulated penalty payments shall be payable monthly, on or before the fifteenth day of each month succeeding the month of the violation, and shall be payable to the U.S. Treasury. GenOn shall notify Plaintiffs contemporaneously of any payment of a stipulated penalty, and shall provide Plaintiffs with copies of its monthly discharge monitoring reports at the same time they are provided to DEP.

18. Any payment made under paragraphs 15 or 16 resolves GenOn's liability for civil penalties arising from the violation of the NPDES Permit or this Consent Decree for which the payment is made and precludes Plaintiffs and their members from initiating a new enforcement action under the Clean Water Act and/or the Clean Streams Law based on any exceedance for which such payment is made.

19. Stipulated penalties shall be due automatically and without notice.

VI. PAYMENT

20. GenOn shall make an additional payment of $3,500,000 in settlement of the alleged violations that are the subject of this suit, as set forth in this paragraph. Within thirty (30) days of the Court's entry of this Consent Decree, GenOn shall make an initial payment of

$500,000 to the Foundation for Pennsylvania's Watersheds ("FPW") to establish the Conemaugh River Watershed Restoration Fund (the "Conemaugh Fund") to support environmental restoration, preservation, and protection projects intended to benefit the Conemaugh River Watershed and its ecosystem. The parties shall create such agreements as are necessary to implement the Conemaugh Fund. On or before January 15, 2012, GenOn shall make an additional payment of $1,500,000 to the Conemaugh Fund. On or before January 15, 2013, GenOn shall make a final payment of $1,500,000 to the Conemaugh Fund. GenOn shall have no interest in reversion of any funds in the Fund.

21.  FPW is a 501(c)(3) tax-exempt entity. FPW shall agree, as a condition of receiving any funds pursuant to paragraph 20 of this Consent Decree: (i) to disburse any money it receives under this Consent Decree solely for restoration, preservation, and protection projects that have a direct, tangible impact on water quality in the Conemaugh River or its tributaries; (ii) not to use any money received under this Consent Decree for political lobbying activities; (iii) to provide the parties with a written summary of each project FPW selects to fund out of the Conemaugh Fund, and to allow the parties fifteen (15) business days in which to submit to FPW any comments regarding the selected projects before any funds are disbursed, provided that FPW shall retain ultimate decision-making authority over funding decisions; and (iv) to submit to the Court, the United States and the parties on the first anniversary of receiving the initial payment described in paragraph 20 and on each anniversary thereafter, a report describing how the money in the Conemaugh Fund was spent, and certifying that the funds were used in the manner described in clause (i) of this paragraph, until all funds in the Conemaugh Fund are expended. In any description of the Conemaugh Fund or projects supported by the Conemaugh Fund in annual reports or other materials promoting the work of FPW or its grantees, the description shall

disclose that the Conemaugh Fund was established pursuant to the settlement of a Clean Water Act and Clean Streams Law enforcement suit brought by PennEnvironment and Sierra Club.

22. Any press statement or annual report or other securities filing made by GenOn promoting GenOn's environmental or charitable practices or record that makes reference to GenOn's payment to the Fund or funding of any of the projects described in paragraph 20 shall include the following language: "Funding of [the Fund or any specific projects] was made pursuant to the settlement of a Clean Water Act and Clean Streams Law enforcement suit brought by PennEnvironment and Sierra Club," or a substantially similar statement.

## VII. COSTS OF LITIGATION

23. Consistent with 33 U.S.C. § 1365(d) and 35 P.S. § 691.601(g), within thirty (30) days of the Court's entry of this Consent Decree, GenOn shall pay the amount of $1,250,000 in full and complete satisfaction of GenOn's obligation to reimburse the Plaintiffs' reasonable costs of litigation in this action (including reasonable attorney and expert witness fees) to Plaintiffs' counsel by company check payable to Farrell & Reisinger, LLC; provided, that in any legal action by Plaintiffs to enforce this Consent Decree in which Plaintiffs ultimately prevail or substantially prevail, the Court, in issuing any final order, may award costs of litigation for such prevailing claims (including reasonable attorney and expert witness fees) in the manner provided for in 33 U.S.C. § 1365(d) and 35 P.S. § 691.601(g).

## VIII. ENFORCEMENT

24. The Court shall retain jurisdiction of this case until the termination of the Consent Decree in order to enforce the terms and conditions of the Consent Decree, to modify the Consent Decree, and to resolve any disputes arising hereunder. In the event GenOn fails to

comply with any provision of this Consent Decree, the Plaintiffs may seek to enforce this Consent Decree by motion in this case.

25. The remedies provided by paragraph 24 and paragraphs 14 through 19 are cumulative and the exercise of one does not preclude the exercise of any other. The failure of the Plaintiffs to pursue any remedy shall not be deemed to be a waiver of that remedy.

## IX. FORCE MAJEURE

26. GenOn shall take all necessary measures to avoid delays in compliance with this Consent Decree. "Force Majeure" for the purposes of this Consent Decree is defined as an event arising from causes beyond the control of GenOn or the control of any entity controlled by GenOn, including its consultants and contractors, which could not have been foreseen and prevented by the exercise of all reasonable diligence, which delays or prevents the performance of any obligation under this Consent Decree or NPDES Permit. An increase in the cost of performing the obligations set forth in this Consent Decree, changed financial circumstances, or GenOn's economic inability to comply with any of the obligations of this Consent Decree, are not Force Majeure events.

27. If any event occurs that causes or may cause delay in the completion of any requirement of this Consent Decree, GenOn shall so notify the Plaintiffs within five (5) working days by telephone and within ten (10) working days in writing, of the date GenOn becomes aware or reasonably should have become aware of the event impeding performance and that such event was attributable to Force Majeure. The written notice shall include all necessary documentation, as well as a certification from an authorized individual, specifying the bases for GenOn's contention that it experienced a Force Majeure event, the causes of the event, the measures taken to prevent it, the reasons for the delay in performance, the expected duration of

the delay, and the efforts which have been made and are being made by GenOn to mitigate the effects of the event and to minimize the length of the delay. The original submission may be supplemented within fifteen (15) working days of its submission. Failure to so notify shall constitute a waiver of the claim of Force Majeure as to the event in question if Plaintiffs are prejudiced by any delay in notification.

28. The Plaintiffs will decide whether to grant all or part of the extension requested on the basis of all documentation submitted by GenOn pursuant to paragraph 27, including any supplemental information that may be provided, and other information available to Plaintiffs within thirty (30) days of receipt of documentation from GenOn. If the parties cannot reach agreement, GenOn shall have the burden of proving to the Court that refusal by the Plaintiffs to grant the requested extension was unreasonable based upon the information then available to the Plaintiffs.

## X. GENERAL PROVISIONS

29. This Consent Decree constitutes a settlement by the Plaintiffs of all claims for civil penalties and injunctive relief pursuant to the Clean Water Act and Clean Streams Law for events occurring at the Conemaugh Generating Station prior to the date of entry of this Consent Decree, including but not limited to matters alleged in the Complaint and notice letters.

30. The provisions of this Consent Decree shall be severable, and should any provision hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the parties.

31. This Consent Decree shall constitute the entire integrated agreement of the parties. No prior or contemporaneous communications or prior drafts shall be relevant or

admissible for purposes of determining the meaning or extent of any provisions herein in any litigation or any other proceeding.

32. A title used at the beginning of any paragraph of this Consent Decree may be used to aid in the construction of that paragraph, but shall not be treated as controlling.

33. GenOn shall not assert any claim of confidentiality for any documents or information provided to the Plaintiffs pursuant to this Consent Decree. Notification to a party shall be deemed submitted on the date it is postmarked. All correspondence concerning this Consent Decree and all documents that are submitted pursuant to this Consent Decree shall be addressed as follows:

As to the Plaintiffs:

> Joshua Kratka
> National Environmental Law Center
> 44 Winter Street, 4th Floor
> Boston, Massachusetts 02108
> Telephone: (617) 747-4333

As to GenOn:

> General Counsel's Office
> GenOn Northeast Management Company
> 1000 Main Street
> Houston, Texas 77002
> Telephone: (713) 488-7050

And

> Walter Stone
> 601 13th Street
> Suite 850 North
> Washington, DC 20005

34. No changes, additions, modifications, or amendments of this Consent Decree shall be effective unless they are set out in writing and signed and agreed to by all parties to the Consent Decree and approved by the Court.

35. The effective date of this Consent Decree shall be the date of its entry.

## XI. TERMINATION

36. For each parameter covered by paragraph 10 (iron, manganese and aluminum), paragraph 10 shall expire once GenOn has complied with the monthly average concentration limit for that parameter for twelve (12) consecutive months; this computation may include consecutive months of compliance that began prior to entry of this Consent Decree. For each parameter covered by paragraph 11 (iron, manganese, selenium and boron), paragraph 11 shall expire once GenOn has complied with the monthly average concentration limit for that parameter for twelve (12) consecutive months following the compliance date specified for that parameter in paragraph 11. This Consent Decree shall terminate automatically upon the expiration of paragraphs 10 and 11 and the completion of all requirements of this Consent Decree provided that GenOn certifies to the Court and to Plaintiffs that it has satisfied all such requirements. If Plaintiffs object to such certification, the matter shall be submitted to the Court for resolution.

## XII. CONSENT TO ENTRY OF CONSENT DECREE

37. Each of the parties consents to entry of this Consent Decree, subject to the Court's approval of this Consent Decree. The undersigned representatives of each party certify that they are fully authorized by the party to enter into the terms and conditions of this Consent Decree and to execute and legally bind the represented parties to it. This Consent Decree can be signed in counterparts.

Judgment is hereby entered in accordance with this Consent Decree and Order this _____ day of _____, 2011.

                                                                               United States Magistrate Judge

**FOR PENNENVIRONMENT:**

By:

_____
David Masur
Director

**FOR THE SIERRA CLUB:**

By:

_____
Thomas Y. Au
Conservation Chair, Pennsylvania Chapter

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

By:

_____
James V. Locher
Vice President

**FOR PENNENVIRONMENT AND THE SIERRA CLUB:**

_____
Joshua R. Kratka, Esq.
National Environmental Law Center
*Counsel for PennEnvironment and Sierra Club*

_____
Thomas J. Farrell, Esq.
Farrell & Reisinger LLC
*Counsel for PennEnvironment and Sierra Club*

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

_____
Richard W. Hosking, Esq.
Paul K. Stockman, Esq.
K&L Gates LLP
*Counsel for GenOn*

Judgment is hereby entered in accordance with this Consent Decree and Order this _____ day of _____, 2011.

_____
United States Magistrate Judge

FOR PENNENVIRONMENT:

By:

_____
David Masur
Director

FOR THE SIERRA CLUB:

By:

_____
Thomas Y. Au
Conservation Chair, Pennsylvania Chapter

FOR GENON NORTHEAST MANAGEMENT COMPANY:

By:

_____
James V. Locher
Vice President

FOR PENNENVIRONMENT AND THE SIERRA CLUB:

_____
Joshua R. Kratka, Esq.
National Environmental Law Center
*Counsel for PennEnvironment and Sierra Club*

_____
Thomas J. Farrell, Esq.
Farrell & Reisinger LLC
*Counsel for PennEnvironment and Sierra Club*

FOR GENON NORTHEAST MANAGEMENT COMPANY:

_____
Richard W. Hosking, Esq.
Paul K. Stockman, Esq.
K&L Gates LLP
*Counsel for GenOn*

Judgment is hereby entered in accordance with this Consent Decree and Order this _____ day of _____, 2011.

 

_____
United States Magistrate Judge

FOR PENNENVIRONMENT:

By: *[signature: David Masur]*

_____
David Masur
Director

FOR PENNENVIRONMENT AND THE SIERRA CLUB:

_____
Joshua R. Kratka, Esq.
National Environmental Law Center
*Counsel for PennEnvironment and Sierra Club*

FOR THE SIERRA CLUB:

By:

_____
Thomas Y. Au
Conservation Chair, Pennsylvania Chapter

_____
Thomas J. Farrell, Esq.
Farrell & Reisinger LLC
*Counsel for PennEnvironment and Sierra Club*

FOR GENON NORTHEAST MANAGEMENT COMPANY:

By:

_____
James V. Locher
Vice President

FOR GENON NORTHEAST MANAGEMENT COMPANY:

_____
Richard W. Hosking, Esq.
Paul K. Stockman, Esq.
K&L Gates LLP
*Counsel for GenOn*

13

Judgment is hereby entered in accordance with this Consent Decree and Order this _____ day of _____, 2011.

_____
United States Magistrate Judge

**FOR PENNENVIRONMENT:**

By:

_____
David Masur
Director

**FOR THE SIERRA CLUB:**

By:

*Thomas Y. Au* (signature)
_____
Thomas Y. Au
Conservation Chair, Pennsylvania Chapter

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

By:

_____
James V. Locher
Vice President

**FOR PENNENVIRONMENT AND THE SIERRA CLUB:**

_____
Joshua R. Kratka, Esq.
National Environmental Law Center
*Counsel for PennEnvironment and Sierra Club*

_____
Thomas J. Farrell, Esq.
Farrell & Reisinger LLC
*Counsel for PennEnvironment and Sierra Club*

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

_____
Richard W. Hosking, Esq.
Paul K. Stockman, Esq.
K&L Gates LLP
*Counsel for GenOn*

13

Judgment is hereby entered in accordance with this Consent Decree and Order this _____ day of _____, 2011.

_____
United States Magistrate Judge

**FOR PENNENVIRONMENT:**

By:

_____
David Masur
Director

**FOR THE SIERRA CLUB:**

By:

_____
Thomas Y. Au
Conservation Chair, Pennsylvania Chapter

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

By:

_____
James V. Locher
Vice President

**FOR PENNENVIRONMENT AND THE SIERRA CLUB:**

*/s/ Joshua R. Kratka*
Joshua R. Kratka, Esq.
National Environmental Law Center
*Counsel for PennEnvironment and Sierra Club*

_____
Thomas J. Farrell, Esq.
Farrell & Reisinger LLC
*Counsel for PennEnvironment and Sierra Club*

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

_____
Richard W. Hosking, Esq.
Paul K. Stockman, Esq.
K&L Gates LLP
*Counsel for GenOn*

Case 2:07-cv-00475-RCM   Document 134-1   Filed 06/06/11   Page 18 of 18

Judgment is hereby entered in accordance with this Consent Decree and Order this _____ day of _____, 2011.

_____
United States Magistrate Judge

**FOR PENNENVIRONMENT:**

By:

_____
David Masur
Director

**FOR THE SIERRA CLUB:**

By:

_____
Thomas Y. Au
Conservation Chair, Pennsylvania Chapter

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

By:

_____
James V. Locher
Vice President

**FOR PENNENVIRONMENT AND THE SIERRA CLUB:**

_____
Joshua R. Kratka, Esq.
National Environmental Law Center
*Counsel for PennEnvironment and Sierra Club*

*/s/ Thomas Farrell*
_____
Thomas J. Farrell, Esq.
Farrell & Reisinger LLC
*Counsel for PennEnvironment and Sierra Club*

**FOR GENON NORTHEAST MANAGEMENT COMPANY:**

_____
Richard W. Hosking, Esq.
Paul K. Stockman, Esq.
K&L Gates LLP
*Counsel for GenOn*

13